## MARTIN BECKHARD

*v.*

## JAMES RUDOLPH et al.

[Argued May 31st, 1904. Decided November 4th, 1904.]

1. Subcontractors, such as plumbers, plasterers and painters, who supply the material and put it into the building, are not materialmen within the meaning of section 3 of the Mechanics' Lien law, and are not protected thereby.

2. A stop notice must show a demand upon the contractor for payment as well as his refusal to pay.

3. A notice of a materialman, stating that a certain amount of money is due to the undersigned "for work done and materials furnished," is fatally defective, because a part of the debt exhibited in the notice is due for labor, for which only a "journeyman or laborer employed" by the contractor can obtain a lien through a stop notice, while a materialman's notice must exhibit a debt due only for "materials used in the erection" of the building.

---

On bill of interpleader. Final hearing on defendants' statements of claims.

*Mr. Frederick Frambach,* for the complainant.

*Mr. John W. Slocum,* for the defendants Adamson & Son.

*Mr. Winfield S. B. Parker,* for the defendant Poole.

*Mr. Thomas P. McKenna,* for Otto H. Wickliffe and Messrs. Chandler & Mapps, defendants.

STEVENSON, V. C. (orally).

This is an interpleader case. The bill is filed by Martin Beckhard, the owner of the building with which we are concerned in this case, against James Rudolph, the contractor, between whom and the complainant there was a written contract for the construction of the building, duly filed in the clerk's office, and also against four other parties who claim to have furnished materials used in the building or performed labor in its erection, and on that account claim to have liens upon the money due from the complainant, Beckhard, to the defendant, the contractor, Rudolph, fixed upon the fund by the service of stop notices under the third section of our Mechanics' Lien law. Being unable to file liens upon the building because of the fact that the contract between the owner and the contractor was duly filed, they claim the right to get a lien upon the fund in the hands of the owner under the third section of the act to which I have referred.

The bill is in the usual form, merely asking that the complainant be allowed to lay down the fund which he admitted he owed to the contractor, some $824, in court, and be excused from further attendance, leaving the defendants to litigate their several claims *inter sese* over this fund. The four parties who filed the stop notices and claim liens filed answers which merely denied the right of the complainant to a decree that they interplead. These answers are correct in form where the defendants desire to prevent the complainant from obtaining the final relief, so far as he is concerned, of a decree of interpleader. They denied his right to such decree, and prayed that they be dismissed. None of these answers were accompanied by any cross-bills or

statements of any kind setting up the claims of the defendants as against each other. Each, I think, sets up a claim that the answering defendant is entitled to a lien on the fund. The contractor, Rudolph, filed no answer, and a decree *pro confesso* was taken against him. He admitted, practically, that the complainant was entitled to a decree that the defendants interplead, but he made no admission that the parties serving stop notices had acquired liens on the money; he only admitted that the complainant was entitled to lay down the $824 and go without day.

The cause was duly heard on the pleadings and proofs, and a decree was made discharging the complainant on his payment into court of $824, and directing that the defendants interplead and file statements of their respective claims pursuant to rule 221. The four defendants who claimed liens thereupon filed statements of their claims. The defendant Rudolph filed no statement, although at the suggestion of the court he was notified of the hearing for the determination of the contentions among the defendants. He had a very great interest. The defendants are seeking to get money that belongs to him, and they have to prove their case against him. He was notified, but did not appear. The four parties serving stop notices, however, are obliged to prove their liens. If they do not prove their liens the money, of course, belongs to Rudolph. If no money were due from the complainant, Mr. Beckhard, to the contractor, the defendant Mr. Rudolph, there would be nothing to which any of the liens could attach. This whole proceeding, under the third section of our Mechanics' Lien act, is predicated upon an indebtedness from the owner to the contractor, which will be paid to him unless the liens are perfected. On the trial, therefore, as I have said, it became necessary for the defendants who served stop notices and filed their claims to prove that they had acquired liens under the statute upon this money, the $824 which the complainant had paid into court, and which is due to Mr. Rudolph, unless the liens absorb it.

Now, I have to deal with four claimants who have served stop notices and claim liens. The court is obliged in this case to find out whether these four claims are such as are lienable under the third section of our statute, and then whether notices were served

pursuant to the terms of our statute, so as to fix these liens upon the fund. You may have money in the hands of the owner which a creditor of the contractor cannot reach by a stop notice, upon which the creditor cannot fix a lien, because he is not such a creditor as, under section 3, is permitted to acquire a lien by service of the stop notice. You may have a creditor of the contractor who is able, under the terms of the third section, to acquire a lien by serving a stop notice, but he may, by failure to pursue the statute, in fact, fail to acquire a lien. In order to give any one of these four men a lien on this fund it must appear satisfactorily that the claim is one which is lienable within the meaning of the third section, and it must then appear that the lien has been fixed on the fund by compliance with the terms of the statute, or, as may be said—practically covering every case— it must appear that a notice has been given in compliance with the terms of this statute. If, I may add, a creditor of the contractor gives a notice which is in full compliance with the act, he will have no lien unless his claim is lienable within the meaning of the act. A creditor of the contractor, whose claim is lienable and who does not serve the proper notice, gets no lien. A creditor of the contractor whose claim is not lienable, but who serves a notice in conformity with the act, gets no lien.

Now, those things must be borne in mind in dealing with each one of these claims. The claimant must have a debt due him which is lienable under the act, and then he must pursue the act, or, in other words, give the written notice in conformity with the act. The written notice must have all these characteristics which are defined here.

Now, before I take up these papers in order, I am going to refer briefly to the act, first, to see what debts are lienable, and next to see what kind of a notice must be served in order to fix a lienable debt as a debt on the fund.

Section 3 of the present act—the act of 1898—says:

"That whenever any master workman or contractor shall, upon demand, refuse to pay any person who may have furnished materials used in the erection of any such house or other building [and that is, any house or building for the construction of which a contract has been filed], or any journeyman or laborer employed by him in the erecting or constructing

any building, the money or wages due to him, it shall be the duty of such journeyman or laborer or materialman to give notice, in writing, to the owner or owners of such building, of such refusal and of the amount due to him or them and so demanded."

Now, I shall not read the rest of the section, or raise any questions that might come up in considering closely its phraseology. So much of the section as I have read which relates to the case of the journeyman or laborer has come down from quite an early statute. My 'recollection is, from the brief examination that I made the other day, that the lien by a stop notice was created in favor of the journeyman and the laborer by a special lien law, passed in 1835, relating to Trenton and some other adjacent places. There was no lien by stop notice provided in the Camden act of 1820, which is the origin of all our legislation in regard to mechanics' liens. A lien by a stop notice may have been provided in some special law prior to the Trenton act of 1835, but the Trenton act is the first one that I now recollect containing such a provision. The revised statute of 1846, which covered a number of counties and townships, contained this same provision in favor of the journeyman or laborer only, and when this statute, in 1851, was extended to the entire State of New Jersey, and the state had for the first time a general Mechanics' Lien law, the lien by stop notice was not extended. In the general Mechanics' Lien law of 1853 a bungling attempt was made to extend the lien by a stop notice to a materialman, but whether such extension in fact was effected or not I do not think the courts ever decided, although I may be mistaken about this. However this may be, the law was extremely imperfect until the revision of 1874, when the lien by stop notice was distinctly provided for the materialman and a proceeding to enforce it was expressly prescribed.

Thus we see that there never has been any effort made in New Jersey to give everybody whose lien on a building is cut off by the filing of the general contract a substituted lien on the money in the owner's hands. Under the revised statute of 1874 and the present statute, there are two classes of persons whose debts are made lienable by a stop notice. The first is "any person who may have furnished materials used in the erection" of the

building. That is the first class. During the argument I raised the question whether a subcontractor, who has furnished materials and labor under a contract, can be deemed a person who has furnished materials used in the building, within the meaning of this law. In order to find out what the exact meaning of that phrase is, "any person who may have furnished materials used in the building," we must read the whole statute, and we find that further on this person is called a "materialman." In the early part of the statute we have the two classes—*first,* any person who may have furnished materials used in the erection of the building; *second,* any journeyman or laborer employed by the contractor in erecting the building—and a little further on the phrase "money or wages" is employed—the word "money" relating to the person who has furnished materials, the word "wages" plainly relating to the journeyman or laborer. The language is used distributively and with accuracy. A little further on we find these same classes called by these terms: "Such journeyman, or laborer, or materialman." So that the person who, in the first part of the section is called "any person who may have furnished materials used in the erection of the building" is called a "materialman" in the latter part of the section.

Now, the question is whether a subcontractor, like Mr. Wickliffe, the painter, who was just on the stand, or Messrs. Adamson & Son, the plumbers—Mr. Wickliffe was the painter, who furnished the paint and put it on; Messrs. Adamson & Son are the plumbers, who furnished the plumbing and set it up—I say the first question is whether these subcontractors are materialmen who have furnished materials used in the erection of the building, within the meaning of this act.

I suggested to counsel that the phraseology first employed— "any person who may have furnished materials used in the erection of any building"—might be deemed to cover the case of the painter, the plumber and the mason and plasterer. I suggested that the plumber might be said to furnish materials for a contract price—not as brick are delivered, dumped in the yard, but set up, installed. The furnishing of materials installed in the building may be twice as expensive as the furnishing of the

materials, leaving their installation to some other contractor or person. My suggestion was that the plumber, who was a subcontractor, might be deemed to be furnishing material, and therefore would be entitled to a lien under this section for the amount of his contract price. But I think the force of the word "materialman," in the latter part of the section, prevents such construction from being made. I think it might be claimed, in view of that word "materialman," that the phrase "who may have furnished materials," in the first part of the section, practically means "who may have furnished materials only." A lien is given to a materialman—to a man who has furnished materials—for the value of the materials. If his charge is for materials alone, then he is a materialman; if his charge is for work and labor in putting the materials in the building, then he is a contractor for the erection of the building. He is not a materialman. He never is described as such. The distinction has been taken in many of the statutes and is perfectly well recognized in trade between the purveyor of labor—I mean mere hand labor, for wages, or labor of a higher class—and the purveyor of materials. There are two distinct classes. And a materialman is a man who simply supplies to the building, or for use in the building, material which some one else is to incorporate in the building by his labor. If a man makes a contract to supply material, and by his labor incorporates that material into the building, he is not a materialman, in my judgment, and by no construction of this act, therefore, can he be allowed to obtain a lien by a stop notice.

I said that the statute does not pretend to give every person who would have a lien upon a building, but who is deprived of that lien by the filing of the contract, a substituted lien on the money. That is perfectly plain, in my judgment. I gave some illustrations to counsel during the course of the argument. Take the case of the mason, who agrees, for a contract price, to lay the brick at so much per thousand—the builder furnishing the brick, and the mortar or cement. That is not an uncommon contract. If a master mason made such a subcontract, with the builder to lay all the brick of a certain building, with the mortar

and the brick supplied by the builder, at so much per thousand, he might have a bill due him of $1,000 or $2,000. He could file a lien if the contract between the owner and the contractor were not filed. But if the contract between the owner and the contractor were duly filed, so as to cut his lien off, he certainly could get no lien by a stop notice, because he is not a material-man; he has not furnished materials used in the building at all. Nor is he a journeyman or laborer employed by the contractor. He is a subcontractor for labor, and he can get no lien of any kind. I think I also suggested to counsel the case where the contractor, in the execution of his contract, might be obliged to employ professional help—might be obliged to employ a very scientific surveyor to make some very accurate adjustments. I do not see how such a scientific, professional gentleman could get a lien by a stop notice on the ground that he was either a journeyman or a laborer employed by the contract, and yet, undoubtedly, he would have his lien, under section 1, if the contract had not been filed. While listening to counsel I thought of quite a wide variety of instances where undoubtedly a person supplying labor for the erection of a building would have a lien against the building unless the contract was filed, and if the contract is filed he would have no lien, and could acquire none, under the third section, by the service of a stop notice. So that it is misleading to suppose that because a party supplying labor or materials, or both, to a building, would have a lien if the contract had not been filed, such lien being cut off by the filing of the contract, he could acquire a lien by service of the stop notice. That is not true. In order to acquire a lien under the third section the party must stand in the position of a materialman, or of a journeyman or laborer employed by the contractor.

Applying this ruling to three of the notices, they are excluded. I should not say the notices. Applying this ruling to the cases proved on behalf of these claimants, three of them, I think, exhibit debts which are not capable of being made liens upon the fund in the owner's hands by service of a stop notice. These are, first, the claim served June 6th, of Adamson & Son, and this is proved to have been a bill for plumbing work done under a subcontract, and Mr. Adamson testified that about one-half

of the claim represents material—that is, the cost of the material laid down in the building—and the other one-half represents labor. Messrs. Adamson & Son stand as partial builders—partial erectors of this building. They are not materialmen in any true sense of the term. Their claim is not merely for furnishing materials; it is for furnishing materials and building them into this structure.

The claim of Poole is for work done under a subcontract with Rudolph for mason and plaster work, as I recall it, and it is of precisely the same character as Mr. Adamson's claim.

The claim of Mr. Wickliffe is the ordinary claim of the painter. He made a subcontract for doing the painting, supplying the paint and laying it on with the brush. He is not a materialman. I do not think any of us ever heard that a painter was called a materialman. The tendency would be to call him a workman— a contractor for labor—because we generally regard the work of laying on the paint as the more prominent feature of his business, as compared with the mere supplying of the paint itself. Oftentimes a painter makes a contract that he will paint a building with paint to be supplied by the owner at the building, and he simply lays it on—merely brings labor to put it on. No one would ever call a painter, who enters into a contract to supply the paint and lay it on, a materialman. It is true he has furnished materials which have been used in the building, but he himself has used them. He has put them into the building, and incorporated them with the building by his own labor, and is not therefore a materialman.

The one claim that seems to be lienable beyond all question is the claim of Chandler & Mapps, and that is a claim for lumber; and I do not recall that any criticism of that claim was made by any of the defendants, except that it was for an excessive amount. My finding in regard to this claim and the others was, in each case, in favor of the claim. The amount was the true amount, although it was reduced by subsequent payments. And I may say here that if any distinction is to be drawn between work done under the contract and extra work, that all the work of these claimants seems to have been done under the contract. The contract which was put in evidence seems to provide for

extra work, and there is nothing to show that any of the work done by each of these claimants was not done under the contract.

Of course, where under a subcontract materials and labor are both furnished, there is no difficulty in having the two items kept distinct. This plumber, or this painter, or this plasterer, might have placed himself in the position of a materialman, furnishing the plumber's supplies or the brick and plaster, or the paint, at a price named and then incorporating the materials so furnished into the building at another price named. In such case no doubt a materialman's lien could be acquired by a stop notice for the amount of the first item, while no lien could be acquired for the second item.

Notwithstanding that what I have said seems to have stated the conclusion of the court in regard to each one of these claims, I think it is worth while to look at the forms of the notices themselves. I have so far dealt with the lienability of these four claims, respectively, and I have found that three of them are not lienable within the meaning of the third section, and that one of them, that of Chandler & Mapps, is lienable. Now, while I might dismiss from further consideration the three claims which I have found not to be lienable, I think it is due to counsel that I should point out some things in regard to the form of these notices, because, I think, even if I am in error in regard to my construction of section 3, and if a subcontractor like this painter, or this plumber, or this mason, could get a lien on the fund by a stop notice, still these notices are defective. The section provides that a materialman who wishes a lien on the fund must give notice in writing to the owner of a certain thing, and that thing is described by the act as "such refusal." The word "such" relates back to the prior part of the section. The materialman must give notice of a certain kind of refusal that is described in this section. He is not allowed to get a lien by simply giving notice that the contractor has refused to pay him money. That does not give him any lien. He has to give notice that the contractor, upon demand, has refused to pay him an amount due him for materials used in the erection of the building. That is what he must give notice of. If a journeyman or laborer is undertaking to get a lien, then his written notice must recite the

fact that there are wages due to him, a journeyman or laborer employed by the contractor, and that he has demanded the amount due, and the contractor has refused to pay him. All these things must appear. The order in which these things appear in the section, or are enumerated in the section, is not the natural order. The natural order is this: in the case of the material-man it must appear from the notice that the man who serves the notice is a materialman, that is to say, that he has furnished materials which have been used in the building. That is the first thing. Second, that an amount of money is due to him on account thereof; third, that he has demanded this amount of money from the contractor; and fourth, that the contractor has refused to pay him. And in the same way you can state the different things which the notice of the journeyman or the laborer must set forth.

Now, taking this notice of Adamson & Son, it states that a certain amount of money is due to the undersigned for work done and materials furnished for and in the erection, alteration and remodeling of the cottage. It does not say that the materials were actually used. But if that is not a fatal mistake it combines the amount due for materials and the amount due for work. It does not show how much is due for materials; it does not show how much is due for work, and, in respect to the amount due for work, it does not show that Adamson & Son are journey-men or laborers. Even if I am in error in holding that this claim is not lienable, if the correct construction of section 3 would allow these plumbers to serve a notice as materialmen, they would have to allege in that notice, in order to perfect their lien, that they had furnished materials amounting to so much, and so much was due, and they had made demand and the demand had been refused. When they incorporate in their notice a statement that a portion of the money is due to them for work done, they vitiate their whole notice. They are not laborers; they are not journeymen; they cannot get a lien for money due to them for work, and they might just as well say, in this notice, that $665 is due to them for materials furnished and used in the building and groceries sold and delivered by them to the contractor. They would then have in their notice a gross sum of

money mentioned, part of which is a lienable debt and part of which is not. And that is just what they have got here. They mention a gross amount of money due them for work done and materials furnished, and if their claim for materials is lienable their claim for work certainly is not, because, as I said, they have to be in the position of laborers or journeymen employed by the contractors in order to entitle them to a lien for work. The notice also fails to set forth that the amount was demanded. I regard that as a fatal defect. The statute says that the lien may be acquired when there is a refusal *"upon demand."* There can be no lien acquired unless there is a refusal upon demand. It is the intention of the act that the claimant shall go to the contractor and make legal demand of his money so as to put the contractor in default. A refusal may be made without any demand. I am not satisfied with the ingenious argument of Mr. Slocum that the word "refusal" implies a demand—means, by its own force, a denial on demand. The statute expressly provides that the refusal must be upon demand, and the notice is to be of such refusal, *i. e.,* of a refusal upon demand and of the amount due and so demanded. I think it is plainly the intention that the demand shall be made, and that the notice shall inform the owner that the contractor has been put in default by having the demand actually made of him. This construction is accepted without question in one of these cases—the *Johns Case*—where a number of notices were passed upon, and the form, I think, uniformly for years and years which has been followed in New Jersey invariably has set forth that the demand was made.

The notice of Mr. Poole, the mason, is subject to the same objection that I have mentioned already with reference to the Adamson notice. It states that $619.28 is due for work and labor done and performed and for materials furnished. It does not say that the materials were actually used in the building. It combines the two claims and treats them as lienable. And what I have said in regard to that matter, while dealing with the Adamson claim, applies to this, and I need not repeat it. The notice, however, sets forth a demand preceding the refusal, and is not objectionable in regard to that matter.

The notice of Mr. Wickliffe, the painter, is open to the main objection that I have pointed out in the other two notices—states that there is due "the sum of $460.50 for balance of labor and materials for the painting which I have furnished to the said Messrs. Rudolph & Company, and which was used in the erection," &c. I do not recall that there is anything in the body of the notice which calls for consideration or suggests any other defect. The notice, however, is addressed to "Mrs. M. Beckhard." It is hardly necessary, now, to pass finally upon this question, but such consideration as I have given to it has led me to the conclusion that this notice would be insufficient to establish a lien if in other respects it complied with the statute, on account of its being addressed to the wrong party. The statute provides for the giving notice in writing of certain things that I have enumerated *to the owner or owners*—the nature of the debt due from the contractor to the materialman, or to the journeyman or laborer employed by him—the amount of it, the demand, the refusal. Those things are to be set forth in a notice in writing *to the owner*. The owner is the man to be notified of those things, and notified in writing. Now, if all those things are set forth in writing, and the materialman, or the laborer or journeyman, as the case may be, should come and hand the writing to the owner, I do not say that the notice would be defective because of a failure to indicate at the top of the notice, or at the bottom, or anywhere else, to whom it was addressed. If the paper writing is handed to the owner on behalf of the claimant, and signed by him, as it usually is, the owner would perhaps not be allowed to object that the paper was not addressed to him. It might be said that he got notice in writing of what the written notice contained when the paper was delivered to him, but I very strongly doubt whether it is a compliance with the statute to hand the owner a paper writing, which is, on its face, addressed to some one else. You may give John Jones a notice in writing of a fact, and hand the paper to Jones, even although you do not insert his name in the paper; but if you write a fact out on a paper, and address it to John Smith, and then hand it to Jones, can you say that you have given notice in writing to Jones, when what the paper contains is addressed to Smith?

Would not Jones have a right, the moment he saw the paper was addressed to someone else, to refrain from reading it? When Mr. Beckhard got this notice addressed to "Mrs. M. Beckhard," had he not a perfect right to say, "Why, this is a paper for my wife," and to lay it down? What he did with it, I believe, does not appear in the testimony. I think it is a very serious question whether, if the notice of Mr. Wickliffe had been for a lienable debt and correct in form, its being addressed to Mrs. Beckhard would not have been fatal.

These are the views which I entertain in regard to these four claims, and the result is that as to three of them no lien is established on the money as against Mr. Rudolph, to whom the money belongs, except so far as it is subjected to these liens. The lien of Chandler & Mapps alone is established, and the decree will provide for its payment.

I will say here that there are a number of questions presented involving the construction of this statute, and if counsel desire to have this decree reviewed the proper course will be taken to hold the money pending such proceedings for review in a higher court.