GARDNER & MEEKS COMPANY, DEFENDANTS IN ERROR.
v. WILHELMINA HEROLD, PLAINTIFF IN ERROR.

Submitted March 23, 1908—Decided March 1, 1909.

1. Where a stop notice under the Mechanics' Lien act is served upon the proper person and otherwise complies with the statute, it is not vitiated because addressed to a third person.

2. A stop notice under the third section of the Mechanics' Lien act is not·vitiated by a mistake in the name of the contractor who owes the debt, where he is sufficiently identified in the notice as the contractor.

3. Under the Mechanics'· Lien act (*Pamph. L.* 1898, *p.* 538), where a contract for a building is made between a contractor or master workman and one not the owner of the land whereon it is to be built, and is duly filed, a stop notice under the third section is properly served upon the owner of the land and not upon the . person liable upon the contract for the price.

---

On error to the Supreme Court.

For the defendant in error, *Charles E. Hendrickson, Jr.*

For the plaintiff in error, *Weller & Lichtenstein.*

The opinion of the court was delivered by

SWAYZE, J.    This action was brought under the third section of the Mechanics' Lien act (*Pamph. L.* 1898, *p.* 538), against Rudolph Herold and Wilhelmina Herold, his wife, to recover money due the plaintiff from Albert Raas, for materials used in the erection of a building on Mrs. Herold's land, under a contract with her husband. It was admitted at the trial that the defendant Wilhelmina had in hand more money than the amount of the plaintiff's claim (probably meaning the balance of the contract price due to Raas). The plaintiff discontinued as to Rudolph and the entry of a judgment against him, as well as his wife, seems to have been an inadvertence. It is not assigned as error and may be corrected.

It is convenient to dispose first of certain formal objections to the notice that was served. It is said to be defective because it is addressed to Rudolph Herold. Vice Chancellor Stevenson intimated a doubt as to the validity of such a notice in *Beckhard* v. *Rudolph*, 2 *Robb.* 315, 327, although he was inclined to concede that the notice would be valid if not addressed to anyone and handed to the owner. All that the statute requires is that notice be given to the owner of the contractor's refusal to pay and of the amount due. It is a legitimate inference that the building should be described

and the contractor in some way identified. There is no other requirement, and we see no reason why the notice, if served upon the owner, should be addressed to anyone; nor do we see upon what ground it can be vitiated if addressed to another person. It is a mere case of misnomer, and one by which the owner cannot be misled if the building is properly described. At common law a defendant sued by a wrong name must plead the misnomer in abatement. 1 *Tidd* 449, 450; *Oakley* v. *Giles,* 3 *East* 167; *National Condensed Milk Co.* v. *Brandenburgh,* 11 *Vroom* 111.' To hold that a mere mistake in addressing the notice is fatal to its validity would make a misnomer in a notice of more importance than the same error in a summons or a judgment, and that without requiring the other party to plead it in abatement or giving the claimant an opportunity to amend. Such strictness would serve no useful purpose and is not required by the statute.

The objection that the notice spoke of Raas Brothers as the contractors seems to us likewise without merit. The statute does not require the name of the contractor to be mentioned, and we think the notice quite sufficient if it identifies him as the master workman or contractor. The owner cannot then be misled. In the present case the mistake was obvious, for the notice itself consistently used the singular pronouns him and he, and the defendant must have known that "Raas Bros." was a mere slip. The notice stated all that the statute in terms required, and sufficiently identified the building and the contractor. It is not questioned that demand of payment was made of Albert Raas and by him refused, or that the money is due from him to the plaintiffs.

The court refused to allow the defendant to show the condition of the doors in the building after the work was completed by one Garish, who had been employed by the defendant to finish the house. To this objection there are two answers: (1) The condition of the doors so long after the original contractor had left was irrelevant, for injury might have been done them in the meantime; (2) the court in overruling the question was careful to state that the defendant might prove that the work required by the specifications had not all

been done, and the cost of doing the work according to the original specifications. The defendant did not attempt to make this proof.

The important question in the case is whether suit can be maintained upon a notice served under the third section of the Mechanics' Lien act upon the person on whose land the building is erected when the contract was made with a third person and there is no contractual liability on the part of the owner of the land.

It is settled that the remedy by stop notice is not available where there is a right of lien under section 1 of the act. It has also been held in this court that a lien cannot be filed where the building has been erected under a contract duly filed pursuant to section 2, even in a case where the contract is with a third person and not with the owner of the land. *Earle* v. *Willetts & Co.*, 27 *Vroom* 334. Under the established law the building in this case was protected from lien unless the contract between Raas and Rudolph Herold was tainted with fraud. The only suggestion that can be made looking in that direction is that he was agent for his wife and was not contracting for himself. This, however, would hardly amount to fraud, especially in view of section 13 of the act which creates a statutory presumption that a building erected upon land of a married woman has been so erected with her consent. We fail to find any circumstance in this case which will take it out of the rule of Earle *v.* Willetts & Co. The property was therefore not subject to lien under section 1, and the plaintiffs were left without remedy unless they could impound the money due the contractor by a stop notice under section 3.

That section requires that the notice be served upon the owner of the building. In the present case the building was upon land of Mrs. Herold. Her husband had no estate therein. *Porch* v. *Fries,* 3 *C. E. Gr.* 204, approved by this court in *Trade Insurance Co.* v. *Barracliff,* 16 *Vroom* 543, 550. Unless therefore we are to give some peculiar meaning to the words "owner of the building," it is plain by the express language of the statute that the notice was properly served

upon Mrs. Herold. No valid argument against the plain
meaning of the words can be drawn from the fact that differ-
ent words are used in section 16, which requires that the lien
claim should state the name of the owner of the land or of
the estate therein on which the lien is claimed. The object of
that provision is manifest. A building may be erected by one
not the owner of the land but the owner of some estate therein
only, as for example a term of years. In such a case the
owner of the particular estate may well be called the owner
of the building as distinguished from the owner of the
land, and may well have a right to remove the building. No
such distinction is possible where he who erects the building
has no estate whatever which would enable him either to enjoy
the use of the building, or to sell or remove it. To call such a
person the "owner of the building" would be a strange use
of words:

The difficulty in the case—and it is a real difficulty—is
caused by the provisions of section 3, which authorize the
owner to retain the amount due the journeyman, laborer or
the materialmen out of the amount owing on the contract, or
that may thereafter become due on the contract, and in a
proper case to pay the same and receive an allowance therefor
in the settlement of accounts between him and the master
workman or contractor. There is great force in the argument
that where there is no privity of contract between the owner
and the contractor, there can never be anything owing on the
contract and consequently no allowance to the owner for any
moneys paid to laborers or materialmen in satisfaction of
stop notices. The difficulty, however, is not insuperable.
Where the contract is duly filed, the contractor alone may file
a lien against the building and curtilage. If he does so, he
has a claim against the owner's property, and this claim the
owner must satisfy or lose his property. The enforcement of
such a lien by suit, or its adjustment by private settlement,
necessarily involves an accounting between owner and con-
tractor to ascertain the amount due, and on that accounting
due allowance may be made for money which the owner has
been compelled to pay in satisfaction of stop notices. It may

be a little difficult to say that the amount is owing on the contract, to use the words of the first clause; but it is not quite so difficult to say, in the language of the second clause, that it has thereafter become due on the contract for labor and materials used in the erection of such building. It has become due not by virtue of the contract but by virtue of the statute giving a lien to the contractor, which the owner must satisfy.

We are led to adopt this construction not only in order to reconcile the later provisions of section 3 with the earlier provisions requiring notice to be served upon the owner of the building, but by a consideration of the aim and spirit of the act. The aim is well stated in the title; it is "to secure to mechanics and others payment for their labor and materials in erecting any building." This title would be most deceptive in a case like the present, unless our construction is adopted. No lien could be filed, since the rule in Earl *v.* Willetts forbids; and no stop notice could be served if privity of contract is required between owner and contractor. Such a construction would open wide the door for a fraudulent evasion of the act. Any owner might have a contract made in the name of a third person, might file it, and protect his building from lien by the laborers and materialmen, and successfully defend against stop notices. It would no doubt be open to lien claimants to expose the fraud, but it would put that burden upon those least able to bear it because least likely to know the facts, and least able to prove them.

It is settled that the effect of a stop notice is to work an assignment *pro tanto* of the fund due the contractor. *Carlisle* v. *Knapp,* 22 *Vroom* 329. This right by way of assignment has been enforced even where the payment to the contractor was to be in land and not in money. *Anderson* v. *Huff,* 4 *Dick. Ch. Rep.* 349. The contractor has a double security; he has his personal claim against the one with whom he has made his contract, and he has security for this claim by a lien upon the building and land of the owner. It is analogous to a debt secured by bond and mortgage, and there can be no doubt that an assignment of one carries the other. The object of the Mechanics' Lien law was to substitute a claim upon the

fund belonging to the contractor for the lien of the laborers and materialmen upon the building and land, in cases where that lien was taken away by the filing of the contract pursuant to section 2; and equity requires that the laborers and materialmen should be subrogated *pro tanto* to all the securities the contractor has for the particular debt. By section 2, as interpreted in Earle *v.* Willetts & Co., the owner has the advantage of relief from the liens, and ought on the ordinary equitable principle to bear instead, the less onerous burden imposed by section 3.

This construction does away with another difficulty that might be. thought to arise—that the owner of the land might be subjected to a personal judgment in excess of the value added to his land by the building. If he is liable to satisfy the stop notices only out of the special fund arising from the building and land, upon which the contractor has a right of lien, it is open to him to plead that the value of the building and land is less than the amount of the stop notices, very much as an administrator might plead *plene administravit*. In such a case, if it should ever arise, the action would be in form a personal action, but the judgment would be special, to be satisfied out of the property. It will be time enough to decide that question when presented. It is not involved in the present case.

We do not attribute great force to the suggestion that the amount due might be paid to the contractor by the person with whom the contract is made. That is a risk which the laborers and materialmen always run, and if the payment has been properly made the right of the contractor to file a lien on the building is gone, and there is no fund due him that his creditors can impound.

It is objected that our view makes it possible to serve a stop notice in a case where the owner is entirely ignorant that a third person is erecting a building on his land. This is an error. The right to serve stop notices is limited in such cases to those instances in which the contractor has a right of lien. He has no right of lien where the building is not authorized by the owner or is built without the knowledge of

the owner, except in the case of married women, who are presumed to consent unless they file an objection; even in this case the provision that the notice of objection shall state that the building is being erected against the married woman's wishes and consent, involves a pretty clear implication that the statutory consent is not to be presumed except in a case where the married woman has knowledge and fails to object.

We have discussed the case with the fullness which its importance demands, as if the question presented were the propriety of the direction of a verdict by the trial judge in favor of the plaintiff. No exception was sealed to this direction. There was an exception sealed to the refusal to direct a verdict for the defendant. This refusal was clearly correct.

The judgment is affirmed, with costs.

PARKER, J. (concurring). On the testimony in the case a jury question was raised as to whether the defendant below, whose husband signed the building contract as ostensible owner, was not in fact the contracting principal, and the holder of the fund sought to be reached by the stop notice on which plaintiff's claim was based, the husband being merely her agent and no fraud being intended. On this theory of the propriety of serving the stop notice on the wife, I vote to sustain the action of the court below in refusing to direct a verdict for the defendant, no exception having been taken to the positive direction in favor of the plaintiff. I concur in the majority opinion on the minor points involved.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J. 14.

*For reversal*—MINTURN, J. 1.